Case number 24-3174, Derek Kramer v. American Electric Power Executive Severance Plan et al., oral argument not to exceed 15 minutes per side. Tony Mary for the appellant, you may proceed. May it please the court, I've asked for three minutes. Yes ma'am, thank you. Rebuttal. Near the end of his opinion for the court in Thole v. U.S. Bank, Justice Kavanaugh wrote, quote, there is no ERISA exception to Article III. I believe the court should hold in this case there's no ERISA exception to the 7th Amendment, and there's no ERISA exception to the Federal Rules of Civil Procedure. The cases that we're dealing with from an earlier era no longer fit very comfortably with a textual approach to statutory interpretation. If we're talking about sort of Sixth Circuit cases, we're still bound by those cases, right? Well, yes, you're obviously bound by the holdings that are holdings, but with, well, let me say this. With respect to Wilkins and to the earlier case that slips my mind right now, Perry, I think you can hold that Sarniff has abrogated those. Because Sarniff is pretty clear that courts of appeals can't impose procedural rules that contradict the Federal Rules of Civil Procedure or statutes or constitutions. And I mean, you just look at Wilkins, and they even say in Wilkins, these are the procedures we think you should follow. That's, in my opinion, is clearly out now with Sarniff, and I don't think I need to go to the unbound court to get that clarified. I mean, does it matter that that case didn't involve ERISA or talk about ERISA? Of course not. The opinion, the court's opinion was clear that courts of appeals, I mean, Judge Barrett questioned whether, or Justice Barrett questioned whether courts of appeals have any kind of supervisory authority at all. But the court in Sarniff struck down a procedural rule that the First Circuit had from the 60s. And this court's held on numerous occasions that some of its cases are no longer good law in light of intervening Supreme Court precedents. So to me. Even that case didn't involve a Federal Rule. That was what, board dire and a supervisory rule that the First Circuit came up with, right? Correct. I don't have, I mean, I don't dispute any of that. But the language of the opinion was clear. And I suppose you could say that, well, when the court went off to say, you can't have a supervisory rule that conflicts with a Federal Rule of Civil Procedure, for example, that that's dicta. I suppose you could make that case. But in my experience in this court, this court pays attention to Supreme Court dicta. So I think to back up from, well, and I'd even add in Wilkins, even Judge Cole disagreed with the plurality decision in Wilkins that set us on this course. But I also think then you have to look at Perry, because Wilkins, to some degree Wilkins was a logical result of Perry. Because Perry said, all you get really is an appeal. You don't get to bring a civil action. You just get to have an appeal. And here's the record, and here's what you do. And in Wilkins, the two concurring judges said, well, wait a minute. If that's what we're doing, then how does Rule 52 and how does Rule 56 fit? So the two are of a piece. And I think Judge Nelbandian has it on all fours that those cases can't survive Sarnaeff. Now, your Sarnaeff argument, that goes to sort of discovery. You want to, you know. Well, that goes to two points. And it's separate from the jury question, but it fits with the jury question. How does it go to the discovery? It goes to discovery, and it goes to Rule 56, because the district court below applied. Well, as it relates to discovery specifically, you didn't challenge the magistrate judge's order. You didn't object. Correct. I did not object to that. So you delayed that argument. Well, but I think Penny Dock puts it here. I mean, I think you can reach it. And as a practical matter, that'll come back. With the exceptional circumstances that allow us to reach that. I think the exceptional circumstances is a question of law, and it's a question that's going to keep coming back. I mean, I have a lot of ERISA cases. Next time, when the magistrate, I mean, part of the problem with that is the courts in Columbus push a lot more stuff to the magistrates than the courts in some of the other district courts do. But I mean, I have a lot of cases in the court in Columbus, and I'll file a motion with the magistrate judge to conduct discovery, and then I'll have to bother the district court judge when the magistrate judge denies my motion. And maybe we should hear it in that case, since you waived it here. Well, that's fine if that's what you want to do. I mean, I appreciate that. I will say I have not waived the jury question. That's squarely presented. And I think the law is also very clear. I mean, my friend on the other side has never disputed that our claim is a legal claim, and that what we're seeking is legal relief. And JARCSI came out conveniently before I filed my reply brief, and it says once again squarely, and there was also a criminal jury question presented there, too. And the Supreme Court is square in the middle of you get a jury trial if you've got a legal claim. So then I'll come back to if I get a jury trial. Can we actually go one step back to the legal claim part and the grand financier kind of analysis? I recognize that you said your brother here has conceded that it's a legal claim, but if we were to start to analyze it from the beginning, how would you have us do so? Well, number one, the claim arises under a contract. It's a bilateral contract. Mr. Kramer worked for AEP. AEP had a plan document that they invited him to participate in. He agreed to participate in it. So by agreeing to participate in the plan, it became a contract. I mean, I don't think... But don't we see like ERISA and how we cover plans and plan documents differently from other contracts? Don't we really analogize that to trust law? Sometimes and sometimes not. I mean, I think if there's a trust case, and I cited in a footnote a case I had a few years back about a fellow that was asking for an approval of a medical claim from a multi-employer benefit plan. But then I think you've got to go back to, okay, why do we analogize them to trust law? Why do we do that? This is a contract. There's no trust. There's no trustee. So I think, if I may, I'll take you back one step further. And wonder why we rely on the law of trust. I can give you some of the history. The history of ERISA goes back, well, it's 50 years old this year. And for the first several years after, a lot of the cases in the Supreme Court dealt with the relationship between ERISA and multi-employer pension plans, which all had trusts and trustees. So we've got all this trust language. But the. Yeah, it's all over Supreme Court precedent that we look to trust law for ERISA. Well, I disagree with that. And I think if you look at. Don't tell me that. Okay, well, fine. I'm going with you here. Okay. Fair enough. Fair enough. I'm with you. I think if you look at Montanil, where the Supreme Court said, and the issue was. I mean, but don't we look at ERISA plans all the time differently from normal contracts in terms of like how we construe them, how we defer, like, I mean, it's not a traditional, you know, direct interpretation. That's correct. But if you look at all the Supreme Court cases talking about jury, they all, you know, a 1983 case is different than some other case. That's true. But talking about jury, but we still have to get, or you have to get into the legal side as opposed to the equitable side. We're in the press world, we start to get more into the equitable side. So is your argument, Your Honor, that. I'm just asking us to start from. Okay. That's one. I don't have an argument here. Right. I'm asking questions. Then I've got. How we get and assume this is just that contract is our best analogy. Well, because there's no trust and no trustee. I mean, I think the premise of your question was that ERISA says you look at trust law. But the Supreme Court said in Montaneo and also in Cigna versus Amera that FIRO 1132A1B embraces contractual claims, not trust claims. So I think that's part of the answer there. Is I think the premise that these are all trust cases is wrong. If the premise is that these are all trust cases, then there is no exception to the Seventh Amendment. I wonder if I could move you on just for a second to the top hat issue.  I mean, I've seen you argue that this is, the district court erred in finding that this was a top hat plan. But the claim seems to seek benefits based upon deferred compensation. Under 1132, that would seem to arguably constitute a top hat plan here. I know your time is expiring. Could you respond to? Yeah. And if I have to, I can yield my rebuttal time. Well, you can be brief. Okay. Well, it's a deferred, it's an executive's plan. It's called deferred. But my argument on that point is that Section 409 of the tax code defines now after Enron what it means to defer compensation. And there is, and one of the things you have to have is you have to have a deferral election. And there is no deferral election in this case. There's been nothing deferred. The payment is later. If I do work today and somebody pays me, the deal is you're going to pay me six months from now. That's not deferred compensation in the tax sense because I haven't deferred income tax on that. Can't we consider a dictionary definition to determine what deferred compensation means? I don't think so. I think it's a turn of art. And I think you have to look at the tax code. I think where even B8 says that. I mean, the definition in four, ERISA, when it was passed, had four titles. Title I deals with what we call ERISA today. Title II was all the tax provisions that relate to benefit plans. And the Supreme Court and Roman B8 say they go together. I mean, one of the purposes of ERISA, you know, there were dozens of purposes why ERISA. So the only place we can look to determine what deferred compensation means is the tax code? Well, yeah, I think so. I think because if this plan defers compensation for tax purposes, then it has to defer compensation for Title I. It's one plan. And the IRS cares about whether it defers compensation for tax purposes. I don't see how you can say that it defers compensation for or doesn't defer compensation for one part of the statute and does for the other. So I'm way over my time. Thank you, Your Honor. Good afternoon, Your Honors. May it please the Court. My name is Jason Gerken, and I represent Appalee, the American Electric Power Executive Severance Plan. With me behind council table is Marty Rosenthal. He's in-house counsel with American Electric Power. Your Honor, this Court should affirm the District Court's judgment. This is a straightforward appeal of a claim for denied severance benefits under 1132A1B of ERISA. In accordance with the law in the Sixth Circuit and elsewhere, Mr. Cramer was denied a jury trial. And consistent with suggested guidelines from this Court more than a quarter century ago, the District Court decided the case on the administrative record. Nothing about this is remarkable. There is no doubt that hundreds if not thousands of ERISA cases have been decided in this manner in this circuit for decades. And I imagine there are dozens pending right now before the District Courts and probably some coming up to this Court. But Mr. Cramer calls upon a single panel of this Court to overturn these cases and to erode the careful balance struck by ERISA. AEP's amicus, the American Benefits Council, did a really nice job, I thought, in their briefing of talking about that balance, explaining how we arrived at ERISA, how it balances the interests of employee benefit plans and of the beneficiaries and participants in those plans. And I think there are enormous problems if that is disturbed. And I don't think he has precedent here that warrants being extended into this space. So the Court should not take his invitation there. Judge Mathis, you brought up that, yes, you're still bound by the cases from the Sixth Circuit that hold that there's no jury trial. The Supreme Court's never said otherwise. But even if we're bound by them and acknowledge that, which I understand your brother disputes here, I mean, we can still question them and signal to our colleagues if this is something that needs to be revisited. I understand, Your Honor. So going back to the first principles of the question is something that we still take interest in. So I'll tell you about the jury trial question. Under the Seventh Amendment, you've got two requirements. You look at the common law of England in 1791 when the amendment was ratified. Do we have an analogous claim? Well, I would submit that, no, you don't. It's important to remember that common law, there weren't employee benefit plans. Employees were treated terribly. There were no courts reviewing these claims. This is a contract. The plan is a contract, and so for a contract to speak, you could get a jury trial back in 1791 in England. Courts were not calling them contracts back then. They were not reviewing them as legal claims. So what is your closest analog? Closest analog to? The common law claim. They were handled by courts of equity as trust claims. Even though, as Mr. Murray points out, there's not a trustee here. Employee benefit plans have always been viewed as arising out of trust law. And that's the second claim, or the second portion of the chauffeur's or bear analysis under the Seventh Amendment. What's the remedy sought? And this court has consistently held that claims for benefits under ERISA seek equitable relief. That's Bear, that's Daniel, that's Jamal, that's Wilkins. Outside of this circuit, Calmia, Wardle, Cruz, they all say that claims for benefits resemble claims found in trust law, which were traditionally decided by judges and not juries. I'm not aware of any other circuit that allows jury trials on 1132A1B claims for benefits. Before coming here, I did a Lexis search and I searched 1132A1B and jury trial. 463 hits in the Sixth Circuit and the district courts within the Sixth Circuit. I submit to you this is precedent upon precedent. You don't get a jury. It can't be dismissed as simply dicta, as Mr. Murray argues. Courts have been relying on it, employing it for decades. It is not dicta. He talks about Amara, he talks about Montanel. If you really look at the analysis and those decisions, 1132A1B allows for three types of relief. Recovery benefits, enforcement of rights, clarification of rights. It doesn't say anything about reformation, which is what Amara was about. And it doesn't, and Montanel is not analogous. It refers to 1132A1B, but it refers to the enforcement of rights relief, not recovery benefits. So I don't think, Your Honors, the Supreme Court has found otherwise. It hasn't even implicitly found otherwise. The Seventh Amendment just does not grant a claimant to ERISA plan benefits the right to a jury trial. And if it was so obvious that this was the case, why hasn't Congress said so? As my colleague acknowledged, it's been 50 years since Congress passed ERISA. They've had a lot of opportunities to do so, but they haven't. If we can go to the Top Hat plan for just briefly, how do we determine what deferred compensation means? Obviously, Brenda on the other side says we can only look at the tax code. Your Honor, I think the way the few courts that have looked at it have looked at it is from a sort of plain language perspective. It's not a capitalized term. It doesn't refer to the tax code. The 409A argument is a mystery to me because ERISA's 1974, this language under the Top Hat definition has been there since 74. 409A comes about in 2005 as a result of the Enron debacle. And its purpose is to prohibit people from raiding the company coffers before the company goes bankrupt. My colleague relies on Raymond B. Yates' case from the Supreme Court. That's 2004. That's pre-409A. So I don't think there's any cause to look at the tax code and import that into the definition of a not necessary term of art in ERISA. Three titles apart, there's just nothing that supports that. And I think as the district court analyzed, the Top Hat definition, the end of it, for a select group of management or highly compensated employees is really the gist of what we're talking about here. We want a plan that is only able to be signed up for by a limited number of people. And it's the contours of that group of people that they can protect their interests. They can advocate for different benefits. They have all these ways to act in a different manner than a lower level employee can. And for the district court to employ that reasoning, like some other authorities have, I think was correct. And again, I think the ERISA statute could just say it if 409A was most meant to inform the definition of deferred compensation. Congress knows what it's doing. It didn't do that. There's no legislative history supporting that 409A should be inserted into ERISA this way. In terms of the need for a deferral election, again, I don't think that's applicable. But in signing up for the plan, Mr. Kramer effectively did defer his entitlement to benefits until after an event that triggered the entitlement to those benefits. Maybe that's his election time. But again, I don't think it matters because Section 409A does not come into play here. It's an ERISA requirement. Before I wrestle around, I want to get to the last point. Mr. Kramer makes a lot of counsel's decision to title the dispositive motion to the court below one for summary judgment. I think it's important to remember that there were two claims briefed below against two different defendants. One we're talking about today and the Section 1140 claim for interference with protected rights. That's like a retaliation claim. Motion for summary judgment is routine on an 1140 claim. And the title of the motion has nothing to do with how the court looked at it. The court properly construed it as a Wilkins type motion. And as I've been discussing, Wilkins is still good law. Your Honor, if there are no further questions, I'll rest on my briefs. Thank you. Thank you. I'm sure it's been a long day, so I'm not going to take much time. With respect to the jury trial, Wright v. Spaulding invites the court to consider the reasoning behind all of those prior decisions. And I went through them all in my brief. And I don't think there's a holding there that prevents you from deciding there's a jury trial in this case. The only other point I wanted to make, and I'm not sure whether it cuts for me or against me here, is if you decide we're entitled to a jury trial, you almost have to decide that we're entitled to discovery. You almost have to decide that Perry and Wilkins are out the window. Because I don't know how you'd have a jury trial otherwise. So with that, we'll rest on our brief. Thank you very much for your time. Thank you, counsel. Thank you for your arguments. Your case will be submitted.